# EXHIBIT A

colorof**change**.org

July 5, 2016

Freedom of Information Act Request
Federal Bureau of Investigation
170 Marcel Drive
Winchester, VA 22602-4843

Freedom of Information Act Request
U.S. Department of Homeland Security
245 Murray Drive SW
STOP-0655
Washington, D.C. 20528-0655

**Re: Freedom of Information Act Request**

To Whom It May Concern:

This is a request under the Freedom of Information Act, 5 U.S.C. Sec. 552 ("FOIA"), on behalf of Color of Change ("COC") and the Center for Constitutional Rights ("CCR") (collectively "the Requesters") for information regarding the Department of Homeland Security ("DHS") and Federal Bureau of Investigation ("FBI") policies and actions involving the monitoring and surveillance of public protests surrounding police violence, policing reform, racial justice, and the Black Lives Matter movement ("BLM").[1]

We ask that you please direct this request to all appropriate offices and components and/or departments within DHS and FBI, including, but not limited to the following offices or components within DHS: Office of Operations Coordination, Federal Emergency Management Agency, National Operations Center, and Office of Operations Coordination, as well as those departments' contractors and subcontractors; and within FBI: Joint Terrorism Task Force, National Press Office, Field Offices/Divisions[2], Special Flight Operations Unit, and Critical Incident Response Group.

**Purpose of Request**

This request seeks to obtain information for the Requestors and the public on the surveillance and monitoring of protesters exercising their First Amendment constitutional rights at protests across the country from August 2014 to the present. The request is specifically directed at the monitoring of protest activity and public gatherings whose subject matter or theme involved police brutality, criminal justice, racial inequalities, or BLM.

---

[1] *See* John Eligon, *One Slogan, Many Methods: Black Lives Matter Enters Politics,* NY Times, Nov. 18, 2015, available at: http://www.nytimes.com/2015/11/19/us/one-slogan-many-methods-black-lives-matter-enters-politics.html?_r=0 (describing the expansion and ascendancy of the Black Lives Matter movement in national politics.)

[2] We believe the following field offices, in particular, are likely to have responsive records: Baltimore, MD; Chicago, IL; Cleveland, OH; Los Angeles, CA; Minneapolis, MN; New York, NY; St. Louis, MO; Washington, D.C.

*Federal, State, and Local Surveillance Activities*:

Requestors are concerned that surveillance and monitoring practices of the Federal Bureau of Investigation, the Department of Homeland Security and other federal, state, and local law enforcement entities are chilling the First Amendment protected activities of BLM organizers, activists and members of the public at large who are or who wish to speak out publicly in opposition to the alarming – indeed crisis-level – trend of police brutality and killing in the United States. Requestors' concern is based on public reporting, first-hand experience, and corroborating anecdotal accounts from community organizers.

By way of example, last summer, public reporting disclosed that a Baltimore cyber-security firm, ZeroFox, identified prominent Ferguson organizer DeRay McKesson as a "threat actor" who demanded "continuous monitoring" to ensure public safety.[3] ZeroFox, coordinating closely with an FBI intelligence partnership program, offered a briefing at Fort Meade Army base about the data it had collected on McKesson and other leaders organizing protests around the police killing of Freddie Gray. Additionally, in December 2014, Chicago activists, citing a leaked police radio transmission, alleged that city police used a surveillance device called a Stingray to intercept their texts and phone calls during protests over the death of Eric Garner.[4] The device – a military-grade International Mobile Subscriber Identity (IMSI) device – forcibly establishes connections with all cell phones within a given radius, reroutes and captures all communications, and allows authorities to surreptitiously read texts, listen to phone calls, and, more troublingly, track a phone's physical location.[5]  Meanwhile, DHS emails indicate that its surveillance has extended beyond movement organizers to the Black American community writ large. Last spring, DHS revealed the movements of protesters and attendees of a black cultural event, the Funk Music Parade, in Washington, DC[6] and a walk to end breast cancer in a historically African-American neighborhood.[7] Furthermore, it has been reported that the FBI and DHS agents have been going door-to-door of Black Lives Matter activists and community organizers in Cleveland, Ohio, asking about their plans for the Republican National Convention in July – a move that

---

[3] Brandon Ellington Patterson, *Black Lives Matters Organizers Labeled as "Threat Actors" by Cybersecurity Firm,* MotherJones, Aug. 3, 2015, available at: http://www.motherjones.com/politics/2015/07/zerofox-report-baltimore-black-lives-matter

[4] Mike Krauser, *Activists Say Chicago Police Used "Stingray" Eavesdropping Technology During Protests,* CBS Chicago, Dec. 6, 2014, available at: *http*://chicago.cbslocal.com/2014/12/06/activists-say-chicago-police-used-stingray-eavesdropping-technology-during-protests/

[5] *See* Kim Zetter, *Turns Out Police Stingray Spy Tools Can Indeed Record Phone Calls,* Wired, Oct. 28, 2015, available at: http://www.wired.com/2015/10/stingray-government-spy-tools-can-record-calls-new-documents-confirm/. *See also*, *Stingray Tracking Devises: Who's Got Them*, ACLU, available at: https://www.aclu.org/map/stingray-tracking-devices-whos-got-them (counting at least 66 law enforcement agencies in 24 states presently use Stingrays in police work—frequently without a warrant – but also likely underestimating the reach of this technology as the company requires police departments to sign non-disclosure agreements when purchasing the Stingray).

[6] Brandon Ellington Patterson, *Homeland Security is Monitoring Black Lives Matter: Is That Legal?*, MotherJones, Jul. 30, 2015, available at: http://www.motherjones.com/politics/2015/07/homeland-security-surveillance-black-lives-matter

[7] George Joseph, *Exclusive: Feds Regularly Monitored Black Lives Matter Since Ferguson,* The Intercept, Jul. 24, 2015, available at: https://theintercept.com/2015/07/24/documents-show-department-homeland-security-monitoring-black-lives-matter-since-ferguson/

is being seen as an intimidation tactic against people's rights to protest as well as a reminder that these agencies are monitoring political activists.[8]

*Embrace of Military and Counterterror Resources to Surveil Protests*:

The FBI, DHS, and local law enforcement have also embraced a highly militarized, counter-terrorism related approach – both in terms of resources and strategy – to monitoring and surveillance, thus amplifying the chilling effect on protected political speech. In July 2014, newspaper articles pointed to the NYPD and FBI Joint Terror Task Force jointly using their counterterror units to monitor BLM protests and organizers.[9] Further, e-mails from New York City's Metropolitan Transit Authority ("MTA") and the Metro-North Railroad showed that undercover police officers monitored the activities of known organizers at Grand Central Station during police brutality protests.[10] The monitoring was part of a joint surveillance effort by MTA counterterrorism agents and NYPD intelligence officers. In April 2015, activists released a cache of emails showing that the California Highway Patrol in conjunction with the Northern California Regional Intelligence Center – a federal funded counterterrorism fusion center – used counterterror units to monitor the social media activity of BLM activists in the Bay Area.[11] In November 2014, Law enforcement officials at the Department of Homeland Security-funded Commonwealth Fusion Center spied on the Twitter and Facebook accounts of BLM protesters in Boston.[12] Furthermore, in emails obtained by *The Intercept,* members of an FBI Joint Terrorism Task Force tracked the time and location of a December 2014 BLM protest at the Mall of America in Bloomington, Minnesota.[13]

*First-Hand Accounts of Surveillance of Protests*:

In addition, several prominent BLM organizers in Baltimore, New York City, and Ferguson, Missouri, have shared first-hand accounts of being monitored and harassed by law enforcement even when not actively engaged in protests or other constitutionally protected activities. One activist recounted to a reporter that on a day in 2014, a National Guard Humvee threateningly followed her during the Ferguson unrest, tracking her along her route home, turn for turn. In what unmistakably signals a pattern of monitoring and intimidation, another Ferguson organizer was greeted by dozens of

---

[8] Alice Speri *FBI and Police are Knocking on Activists' doors ahead of Republican National Convention*, The Intercept, June 23, 2016, available at: https://theintercept.com/2016/06/23/fbi-and-police-are-knocking-on-activists-doors-ahead-of-republican-national-convention/

[9] *See, e.g.*, Alex Kane, *How the NYPD's Counterterrorism Apparatus is being Turned on Protestors*, Vice, Jan. 18, 2015 available at: http://www.vice.com/read/how-the-nypds-counter-terror-apparatus-is-being-turned-on-police-protesters-119

[10] *See* George Joseph, *Undercover Police Have Regularly Spied on Black Lives Matter Protestors in New York*, The Intercept, Aug. 18, 2015, available at: https://theintercept.com/2015/08/18/undercover-police-spied-on-ny-black-lives-matter/

[11] *See* Darwin BondGraham, *Counter-Terrorism Officials Helped Track Black Lives Matter Protesters,* East Bay Express, April 15, 2015, available at: http://www.eastbayexpress.com/oakland/counter-terrorism-officials-helped-track-black-lives-matter-protesters/Content?oid=4247605

[12] *See* Steve Annear, *Dozens Arrested During Boston Protests*, Boston Magazine, Nov. 26, 2014, available at: http://www.bostonmagazine.com/news/blog/2014/11/26/boston-protests-ferguson-arrests/

[13] Lee Fang, *Why Was an FBI Joint Terrorism Task Force Tracking A Black Lives Matter Protest?*, The Intercept, Mar. 12, 2015, available at: https://theintercept.com/2015/03/12/fbi-appeared-use-informant-track-black-lives-matter-protest/

officers during a routine trip to an area Wal-Mart, despite having never made public where she was going.[14]

     \*\*\*

Political dissent and protest are not crimes; neither are they terrorist activities to be monitored or put-down by counterterrorism units. Nonetheless, the U.S. government, like state and local police forces, has a long, well-documented history of using surveillance, monitoring, and the concomitant threat of coercive state force to intimidate and silence political movements – particularly Black-led movements for social justice and empowerment.  The revelations of FBI, DHS, and local law enforcement surveillance of BLM, only briefly summarized above, leads Requestors to fear that the current surveillance of the emerging movement for political accountability and justice is more coordinated, extensive, and systematic than has been revealed thus far and that it is intended to silence the demands of BLM and related movements.[15]

The public has a right to understand the current motives and activities of government officials and agencies involving this important policy issue, particularly at a time when again both privacy matters and mass protests are at the top of local, national, and even international political agendas.[16]

## A.  Definitions

1) **Record(s).** In this request the term "record(s)" includes, but is not limited to, all Records or communications preserved in electronic (including metadata) or written form, such as correspondences, emails, documents, data, videotapes, audio tapes, faxes, files, guidance, guidelines, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, legal opinions, protocols, reports, rules, talking points, technical manuals, technical specifications, training manuals, studies, or any other Record of any kind.
2) **Agreement(s).** In this request the term "agreement(s)" refers to any agreement, written or otherwise; communications; contracts and/or supplements, modifications or addendums to contracts or agreements.
3) **Communication(s).** In this request the term "communication" means the transmittal of information (in the forms of facts, ideas, inquiries or otherwise).
4) **Local Government(s).** In this request the term "local" government includes state/local government, municipal corporations, tribal governments, tribal business entities, and Alaska Native Corporations.
5) **Protest(s).** In this request the term "protest(s)" includes, but is not limited to, physical gatherings such as rallies, vigils, or public demonstrations of any kind.

---

[14] *See* Brandon Ellington Patterson, *"Black People Need Encryption," No Matter What Happens in the Apple-FBI Feud*, MotherJones, Mar. 12, 2016, available at: http://www.motherjones.com/politics/2016/03/black-lives-matter-apple-fbi-encryption

[15] *See* Dia Kayyali, *The History of Surveillance in the Black Community*, Electronic Frontier Foundation, Feb. 13, 2014, available at:  https://www.eff.org/deeplinks/2014/02/history-surveillance-and-black-community

[16] *See* Jamiles Lartey, *Obama on Black Lives Matter: they are 'much better organizers than I was'*, The Guardian, Feb. 16, 2016, available at: http://www.theguardian.com/us-news/2016/feb/18/black-lives-matter-meet-president-obama-white-house-justice-system; s*ee generally*,  Michael D. Shear, In Nod to Law Enforcement in Apple Case, Obama Ends Attempt to Straddle Privacy Divide, N.Y. Times, Feb. 19, 2016m available at: http://www.nytimes.com/2016/02/20/us/politics/in-nod-to-law-enforcement-obama-ends-attempt-to-straddle-privacy-divide.html

4

6) **Multimedia.** In this request the term "multimedia" includes, but is not limited to, digital and non-digital photographs, video recordings, and audio recordings.

7) **Surveillance.** In this request the term "surveillance" means any form of physical or non-physical/virtual observation, monitoring, recording, or transcription, whether conducted by an individual or through automated means such as by software, aerial surveillance vehicles ("drones") or mounted cameras.

8) **Social media.** In this request the term "social media" includes, but is not limited to, widely used online forums such as Twitter, Facebook, Snapchat, Instagram, Periscope, Redditt.

9) **"Relevant Protests."** In this request the term "Relevant Protests" means those protests whose subject matter or theme involved **police brutality, criminal justice, racial inequalities, or "Black Lives Matter"** including, but not limited to:
    o the police killing of Michael Brown in Ferguson, MO by Officer Darren Wilson
    o the police killing of Freddie Gray in Baltimore, MD
    o the police killing of Eric Garner in Staten Island, NY
    o the police killing of Tamir Rice in Cleveland, OH
    o the police killing of Laquan McDonald in Chicago, IL
    o the police killing of Jamar Clark in Minneapolis, MN
    o the mass shooting incident at Mother Emmanuel AME church in Charleston, SC

10) For purposes of this FOIA request, requestors seek information related to protests that occurred in the following locations and jurisdiction:
    o Ferguson, MO
    o St. Louis, MO
    o Baltimore, MD
    o Cleveland, OH
    o New York, NY
    o Los Angeles, CA
    o Washington, DC
    o Charleston, SC
    o Chicago, IL
    o Minneapolis, MN
    o Oakland, CA

11) For purposes of this FOIA request, requestors seek information in regards to protests that occurred from August 1, 2014 to Present.

## B. Request for Information

a. Communications, including records demonstrating or related to communications, between the FBI or DHS and state and local enforcement entities in the jurisdictions listed above relating to the Relevant Protests.

b. Records, including memos, talking points, policies or protocols, regarding any type of coordination between the FBI or DHS and state and local enforcement entities in the jurisdictions listed above relating to the Relevant Protests.

5

c.  Communications, and records, such as memos, policies, protocols, manuals, talking points, or threat assessments, relating to Relevant Protests.

d.  Communications, and records, regarding the placement of individuals and/or groups and organizations associated with the Relevant Protests into the Nationwide Suspicious Activity Reporting system.

e.  Records or communication, including, but not limited to, emails, policies, protocols, memos, operation manuals, regarding the proposed or actual deployment and use of International Mobile Subscriber Identity (IMSI) catchers[17] during the Relevant Protests.

f.  Any multimedia produced by, or in the possession, of the FBI or DHS [in the course of surveillance of] the Relevant Protests; and any records or communications indicating the existence of or consideration of producing such multimedia.

g.  Records or communication, including emails, policies, protocols, memos, operation manuals, regarding the use of social media monitoring during the Relevant Protests.
    i.  Records or communication, regarding the use of social media surveillance software, including but not limited to programs such as Geofeedia, LifeRaft and Media Sonar.[18]

h.  Records or communication, received or regarding the existence, development or compilation of information by DHS or FBI, on specifically named individuals or groups associated with the Relevant Protests.[19]

i.  Records or communication, including, but not limited to, emails, policies, protocols, memos, operation manuals, regarding the deployment and use of aerial surveillance vehicles or drones during the Relevant Protests.

## C.  **Format of Production**

Please search for responsive records regardless of format, medium, or physical characteristics, and including electronic records. Please provide the requested documents in the following format:

- Saved on a CD, CD-ROM or DVD;
- In PDF or TIF format;
- In electronically searchable format;
- Each record in a separately saved PDF file;

---

[17] *See* Sam Richards, Jason Hernandez and Jerod MacDonald-Evoy, *Cellphone Surveillance Used on Black Lives Matter Protesters at Fourth Precinct in Minneapolis*, North Star Post, Dec. 7, 2015, available at:
http://nstarpost.com/17486/159855/a/cellphone-surveillance-used-on-black-lives-matter-protesters-at-fourth-precinct
[18] *See* Andrea Castillo, *ACLU slams Fresno police for testing social media surveillance software*, Fresno Bee, Dec. 31, 2-15, available at: http://www.fresnobee.com/news/local/article52549320.html
[19] *See* Jason Leopold, *Emails Show Feds Have Monitored 'Professional Protester' DeRay Mckesson*, Vice, Aug. 11, 2015, available at: https://news.vice.com/article/emails-show-feds-have-monitored-professional-protester-deray-mckesson

- "Parent-child" relationships maintained, meaning that the requester must be able to identify the attachments with emails;
- Any data records in native format (i.e. Excel spreadsheets in Excel);
- Emails should include BCC and any other hidden fields;
- With any other metadata preserved.

### D.  The Requesters

*Color of Change ("COC")* is nonprofit civil rights advocacy and communications organization in the United States. ColorOfChange.org exists to strengthen Black America's political voice. Its mission is to empower its members to make government more responsive to the concerns of Black Americans and to bring about positive political and social change for everyone.  Using the Internet, COC enables its members to speak in unison, with an amplified political voice. COC keeps the public informed about the most pressing issues for Black people in America and gives them ways to act. It also lobbies elected representatives using email, the telephone, and face-to-face meetings. COC brings attention to the needs and concerns of the public by holding coordinated events in different parts of the country, running TV and print advertisements, and pushes for the news media to cover highlighted issues. COC also collaborates with other groups doing related work to magnify its impact. Color of Change has no commercial interest in the requested documents and will transmit the requested information on its website and social media to inform the public. The requested materials may also be used as the foundation for op-eds and other traditional media advocacy.

*The Center for Constitutional Rights ("CCR")* is a non-profit, public interest, legal, and public education organization that engages in litigation, public advocacy, and the production of publications in the fields of civil and international human rights. CCR's diverse dockets include litigation and advocacy around policing, and racial and ethnic profiling.  CCR is a member of several networks nationally and provides legal support to civil rights movements.  One of CCR's primary activities is the publication of newsletters, know-you-rights handbooks, legal analysis of current immigration law issues, and other similar materials for public dissemination.  These and other materials are available through CCR's Development, Communications, and Education & Outreach Departments.  CCR operates a website, www.ccrjustice.org, which addresses the issues on which the Center works. The website includes material on topical civil and racial justice rights issues and material concerning CCR's work. All of this material is freely available to the public. In addition, CCR regularly issues press releases and a regularly updated blog, as well as "action alerts" sent to over 50,000 members that notify supporters and the general public about developments and operations pertaining to CCR's work.  CCR staff members often serve as sources for journalist and media outlets, including on issues related to racial justice, police brutality, racial discrimination, and the right to dissent.

### E.  Fee Waiver

The Requesters are entitled to a fee waiver pursuant to 5 U.S.C. § 552 (a)(4)(A)(iii), 6 C.F.R. § 5.11(k), and 28 C.F.R. § 16.10(k) on the grounds that "disclosure of the requested records is in the public interest because it is likely to contribute significantly to the public understanding of the activities or operations of the government and is not primarily in the commercial interest of the requester[s]."  5

U.S.C. § 552(a)(4)(A)(iii); *see also* 6 C.F.R. § 5.11(k) (records furnished by DHS without charge if the information is in the public interest, and disclosure is not in the commercial interest of institution); 28 C.F.R. § 16.10 (k) (records furnished by DOJ without charge if the information is in the public interest, and disclosure is not in the commercial interest of institution). *See, e.g.*, *McClellan Ecological v. Carlucci*, 835 F.2d 1282, 1285 (9th Cir. 1987). Requesters meet the requirements for a fee waiver because the subject of the request concerns the operations or activities of the government; the disclosure of the information is likely to contribute to a significant public understanding of government operations or activities due to the requesters' expertise in the subject area and ability to convey the information; the Requesters' primary interest is in disclosure; and they have no commercial interest in the information. In addition, pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II), 6 C.F.R. § 5.11(k)(2)(iii), (k)(3)(ii), and 28 C.F.R. § 16.10(k)(2)(iii), (k)(3)(ii), the Requesters qualify as a "representatives of the news media," defined as "any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii); *see also* 6 C.F.R. § 5.11(b)(6); 28 C.F.R. § 16.10(b)(6).

As described in Part D above, the Requesters are non-profit organizations dedicated to civil rights and human rights, and have a proven track-record of compiling and disseminating information and reports to the public about government functions and activities, including the government's record and position on surveillance, protests, policing and racial justice. The Requesters have undertaken this work in the public interest and not for any private commercial interest. Similarly, the primary purpose of this FOIA request is to obtain information to further the public's understanding of government actions and policies in regards to the surveillance of peaceful protestors. Access to this information is crucial for the Requesters and the communities they serve to evaluate governmental surveillance actions and their potential detrimental efforts.

As stated above, the Requesters have no commercial interest in this matter. The Requesters will make any information that they receive as a result of this FOIA request available to the public, including the press, at no cost. Disclosure in this case therefore meets the statutory criteria, and a fee waiver would fulfill Congress' legislative intent in amending FOIA. *See Judicial Watch Inc. v. Rossotti*, 326 F.3d 1309 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers of noncommercial requesters.'").

In the alternative, we request a limitation of processing fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II). ("[F]ees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by . . . a representative of the news media."). *See also* 6 C.F.R. § 5.11(d)(1); 28 C.F.R. § 16.10(d)(1). If no fee waiver is granted and the fees exceed $250.00, please contact the Requesters' undersigned counsel to obtain consent to incur additional fees.

### F.  Expedited Processing

The Requesters are entitled to expedited processing of this request because there is a "compelling need" for the information. 5 U.S.C. § 552(a)(6)(E)(i)(I). A "compelling need" is established when there exists an "urgency to inform the public about an actual or alleged Federal Government activity," when the requester is a "person primarily engaged in disseminating information," 6 C.F.R. § 5.5(d)(ii); 28 C.F.R. § 16.5(e)(ii).

8

There is an urgent need to inform the public of the policies and decision-making regarding government involvement in surveillance and monitoring of peaceful protestors and organizers.[20]  Large campaigns and events around policing, racial equality, and BLM continue to be organized and promoted on a nearly daily basis nation-wide.  The interest from members of the public to participate in the protests and support this movement continues to grow, with the media having an equal interest to report on the issues being raised by these protests.  Members of the public, particularly those interested in participating in or supporting protests, have a right to know the level of governmental surveillance of these protests and movements and the potential effects on their privacy and security.

As described in part D above, Color of Change is primarily engaged in disseminating information.  COC has a proven track-record of compiling and disseminating information and reports to the public about government functions and activities, including the government's record on surveillance of political and social movements as well as those movements' leaders and participants.  COC will use its press and media connections as well as its considerable web infrastructure to publicly disseminate information received from this request on a national scale. Based on the findings of this request, COC will also engage directly with groups and communities found to be surveilled or under surveillance for their involvement in protected political activity.

In addition, the DOJ grants expedited processing where the subject of the request is a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence." 28 C.F.R. § 16.5(e) (iv). As discussed in the "Background" section above, there is widespread and exceptional media interest in BLM, in ongoing police brutality and lack of accountability, and on surveillance of political protest activities.  The government's surveillance of activity protected by the First Amendment calls into question government integrity and affects public confidence regarding accountability for police brutality.

## G. Certification & Conclusion

The Requester certifies that the above information is true and correct to the best of the Requesters' knowledge. *See* 6 C.F.R. § 5.5(d)(3); 28 C.F.R. § 16.5(e)(3).  If this Request is denied in whole or in part, the Requesters ask that the DHS and FBI justify all deletions by reference to specific exemptions of FOIA.  The Requesters expects DHS and FBI to release all segregable portions of otherwise exempt material, and reserves the right to appeal a decision to withhold any records or to deny the within application for expedited processing and waiver of fees.

Please furnish all applicable Records and correspondence in electronic format as specified above to: Evan Feeney, Color of Change, 49 West 38th Street, 14th Floor, New York, NY 10018.

Thank you for your consideration.

---

[20] For example, a conference at Georgetown University Law Center entitled "The Color of Surveillance" was scheduled for April 8, 2016 to explore racial bias in government monitoring, including of Black Lives Matter activists.  See conference programming at:  http://www.law.georgetown.edu/news/press-releases/the-color-of-surveillance-georgetown-law-conference-to-explore-racial-bias-of-government-monitoring.cfm. ("The day-long conference will feature Pulitzer Prize-winning historians, scholars, activists and members of the criminal justice, law enforcement and national security communities.")

Sincerely,

Evan Feeney
Media Justice Campaign Manager
ColorOfChange

On Behalf of the Requesters

# EXHIBIT B

**U.S. Department of Homeland Security**
Washington, DC 20528



Homeland
Security

*Privacy Office, Mail Stop 0655*

July 18, 2016

<u>**SENT VIA E-MAIL TO:**</u>  **EVAN.FEENEY@COLOROFCHANGE.ORG**

Evan Feeney
Media Justice Campaign Manager
Color of Change
49 West 38th Street
14th Floor
New York, NY 10018

Re:  **2016-HQFO-00490**

Dear Mr. Feeney:

This letter acknowledges receipt of your Freedom of Information Act (FOIA) request to the Department of Homeland Security (DHS), dated July 05, 2016, and to your request for expedited handling and a waiver of all assessable FOIA fees.  Our office received your request on July 07, 2016.  Specifically, you requested information regarding the Department of Homeland Security ("DHS") and Federal Bureau of Investigation ("FBI") policies and actions involving the monitoring and surveillance of public protests surrounding police violence, policing reform, racial justice, and the Black Lives Matter movement ("BLM"). You are specifically requesting the following:  a. Communications, including records demonstrating or related to communications, between the FBI or DHS and state and local enforcement entities in the jurisdictions listed above relating to the Relevant Protests;  b. Records, including memos, talking points, policies or protocols, regarding any type of coordination between the FBI or DHS and state and local enforcement entities in the jurisdictions listed above relating to the Relevant Protests;  c. Communications, and records, such as memos, policies, protocols, manuals, talking points, or threat assessments, relating to Relevant Protests; d. Communications, and records, regarding the placement of individuals and/or groups and organizations associated with the Relevant Protests into the Nationwide Suspicious Activity Reporting system; e. Records or communication, including, but not limited to, emails, policies, protocols, memos, operation manuals, regarding the proposed or actual deployment and use of International Mobile Subscriber Identity (IMSI) catchers17 during the Relevant Protests; f. Any multimedia produced by, or in the possession, of the FBI or DHS [in the course of surveillance of the Relevant Protests; and any records or communications indicating the existence of or consideration of producing such multimedia; g. Records or communication, including emails, policies, protocols, memos, operation manuals, regarding the use of social media monitoring during the Relevant Protests. -Records or communication, regarding the use of social media surveillance software, including but not limited to programs such as Geofeedia, LifeRaft and Media Sonar;  h. Records

or communication, received or regarding the existence, development or compilation of information by DHS or FBI, on specifically named individuals or groups associated with the Relevant protests; and  I. Records or communication, including, but not limited to, emails, policies, protocols, memos, operation manuals, regarding the deployment and use of aerial surveillance vehicles or drones during the Relevant Protests.

As it relates to your request for expedited treatment, your request is denied.

Under the DHS FOIA regulation, expedited processing of a FOIA request is warranted if the request involves "circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," 6 C.F.R. § 5.5(d)(1)(i), or "an urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information," 6 C.F.R. § 5.5(d)(l)(ii).  Requesters that seek expedited processing must submit a statement explaining in detail the basis for the request, and that statement must be certified by the requester to be true and correct.  6 C.F.R. § 5.5(d)(3).

Your request for expedited processing is denied because you do not qualify for either category.  You failed to demonstrate a particular urgency to inform the public about the government activity involved in the request beyond the public's right to know about government activity generally.  Your letter was conclusory in nature and did not present any facts to justify a grant of expedited processing under the applicable standards.

Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request.  Consistent with 6 C.F.R. § 5.5(a) of the DHS FOIA regulations, the Department processes FOIA requests according to their order of receipt.  Although DHS' goal is to respond within 20 business days of receipt of your request, FOIA does permit a 10-day extension of this time period in certain circumstances.  As your request seeks documents that will require a thorough and wide-ranging search, DHS will invoke a 10-day extension for your request pursuant to 5 U.S.C. § 552(a)(6)(B).  If you would like to narrow the scope of your request, please contact our office.  We will make every effort to comply with your request in a timely manner.

As for your request for designation as a "representative of the news media," your request is denied.  DHS FOIA regulations specifically define "representative of the news media" as "any person actively gathering news for an entity that is organized and operated to publish or broadcast news to the public." 6 C.F.R. § 5.11(b)(6).  Based on the information contained in your letter, I am denying your request for this fee status because you have not presented a convincing argument that Color of Change is an entity organized and operated to publish or broadcast news to the public.

However, you have requested a fee waiver.  The DHS FOIA Regulations at 6 CFR § 5.11(k)(2) set forth six factors DHS must evaluate to determine whether the applicable legal standard for a fee waiver has been met:  (1) Whether the subject of the requested records concerns "the operations or activities of the government," (2) Whether the disclosure is "likely to contribute" to an understanding of government operations or activities, (3) Whether disclosure of the requested

information will contribute to the understanding of the public at large, as opposed to the individual understanding of the requester or a narrow segment of interested persons, (4) Whether the contribution to public understanding of government operations or activities will be "significant," (5) Whether the requester has a commercial interest that would be furthered by the requested disclosure, and (6) Whether the magnitude of any identified commercial interest to the requester is sufficiently large in comparison with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requester.

Upon review of the subject matter of your request, and an evaluation of the six factors identified above, DHS has determined that it will conditionally grant your request for a fee waiver. The fee waiver determination will be based upon a sampling of the responsive documents received from the various DHS program offices as a result of the searches conducted in response to your FOIA request. DHS will, pursuant to DHS regulations applicable to non-commercial requesters, provide two hours of search time and process the first 100 pages at no charge to you. If upon review of these documents, DHS determines that the disclosure of the information contained in those documents does not meet the factors permitting DHS to waive the fees, then DHS will at that time either deny your request for a fee waiver entirely, or will allow for a percentage reduction in the amount of the fees corresponding to the amount of relevant material found that meets the factors allowing for a fee waiver. In either case, DHS will promptly notify you of its final decision regarding your request for a fee waiver and provide you with the responsive records as required by applicable law.

In the event that your fee waiver is denied, and you determine that you still want the records, provisions of the FOIA allow us to recover part of the cost of complying with your request. We shall charge you for records in accordance with the DHS Interim FOIA regulations as they apply to non-commercial requestors. As a non-commercial requester you will be charged for any search time and duplication beyond the free two hours and 100 pages mentioned in the previous paragraph. You will be charged 10 cents per page for duplication and search time at the per quarter-hour rate ($4.00 for clerical personnel, $7.00 for professional personnel, $10.25 for managerial personnel) of the searcher. In the event that your fee waiver is denied, we will construe the submission of your request as an agreement to pay up to $25.00. This office will contact you before accruing any additional fees.

Additionally, your request has been referred to the Federal Emergency Management Agency (FEMA), Federal Law Enforcement Training Center (FLETC), Office of Intelligence and Analysis (I&A), and National Protection and Programs Directorate (NPPD) for processing and direct response to you. You may contact that office in writing at the contact information located on our website: https://www.dhs.gov/foia-contact-information.

We have queried the appropriate component(s) of DHS for responsive records. If any responsive records are located, they will be reviewed for determination of releasability. Please be assured that one of the processors in our office will respond to your request as expeditiously as possible. We appreciate your patience as we proceed with your request.

Your request has been assigned reference number **2016-HQFO-00490**. Please refer to this identifier in any future correspondence. To check the status of your FOIA request, you may

contact this office at 1-866-431-0486 or 202-343-1743, or you may check th e status of your request online at http://www.dhs.gov/foia-status.

Sincerely,

Mia Day
FOIA Program Specialist

# EXHIBIT C

August 23, 2016

Freedom of Information Policy Office
U.S. Department of Homeland Security
245 Murray Drive SW
STOP-0655
Washington, D.C. 20528-0655

Re:    **FOIA APPEAL**

Dear Sir/Madam:

Color of Change ("COC") and the Center for Constitutional Rights ("CCR") (collectively "the Requesters") appeal the determination of the Department of Homeland Security ("DHS") to deny expedited processing and to conditionally permit a fee waiver in connection with FOIA Request 2016-HQFO-00490 ("the Request"). Requesters filed the Request on July 5, 2016, seeking information regarding monitoring and surveillance of public protests surrounding police violence, policing reform, racial justice, and the Black Lives Matter movement.

On July 18, 2016, DHS denied our requests for expedited processing and conditionally granted our request for a fee waiver pending review of a sample of responsive documents ("DHS Denial"). Pursuant to the Freedom of Information Act, 5 U.S.C. § 552(a)(6), 6 C.F.R. § 5.9(a), the Requesters hereby appeal DHS's denial of our requests for expedited processing and DHS's conditional granting of our request for a fee waiver.

**Introduction**

Surveillance of the Black Lives Matter movement is now occurring across the nation. *See* Request at 2-4. In the weeks since our Request was filed, more accounts have emerged exposing the surveillance of protests in New York, Tennessee, San Francisco, Minneapolis, St. Louis and Cleveland, including reports of home-raids and the use of stingrays,[1] all pointing to the existence of systemic, coordinated monitoring of First Amendment protected activity by law enforcement. Moreover, as discussed in our Request, the Black Lives Matter movement continues to generate enormous interest from the media and the public at large; numerous articles have been published in the last eighteen months specifically about law enforcement surveillance of protest activity.[2]

---

[1] *See* Juliet Eilperin and Wesley Lowery, *Inside Obama's Radical Experiment in National Reconciliation*, The Wash. Post (July 14, 2016), https://www.washingtonpost.com/news/post-politics/wp/2016/07/14/inside-obamas-radical-experiment-in-national-reconciliation/; AJ Vicens, *This FBI Tactic May Have Silenced GOP Convention*

[2] *See, e.g.*, George Joseph, *Exclusive: Feds Regularly Monitored Black Lives Matter Since Ferguson*, The Intercept (July 24, 2015) *available at:* https://theintercept.com/2015/07/24/documents-show-department-homeland-security-monitoring-black-lives-matter-since-ferguson/; Mike Krauser, *Activists Say Chicago Police Used 'Stingray' Eavesdropping Technology During Protests*, CBS Local (Dec. 6, 2014) *available at*: http://chicago.cbslocal.com/2014/12/06/activists-say-chicago-police-used-stingray-eavesdropping-technology-during-protests/; Ellie Kaufman, *Social Media Surveillance Could Have a Devastating Impact on Free Speech*, Mic.Com (Jan. 19, 2016) *available at*: http://mic.com/articles/132756/social-media-surveillance-could-have-a-devastating-impact-on-free-speech-here-s-why#.gryx3Phab/.

Both the scope of law enforcement surveillance of the Black Lives Matter movement and the media's concerted coverage of it incontrovertibly demonstrate that the public has an urgent need for information and transparency about this pressing matter.

1. **The DHS Should Grant the Requesters' Request for Expedited Processing**

DHS denied our request for expedited processing by stating that, "you do not qualify for either category. You failed to demonstrate a particular urgency to inform the public about the government activity involved in the request beyond the public's right to know about government activity generally." DHS Denial at 2. The DHS Denial recites the requirements for expedited processing, but does not address the facts or arguments presented by the Requestors.

Requesters are entitled to expedited processing because there is a "compelling need" for the information. 5 U.S.C. § 552(a)(6)(E)(i)(I). A "compelling need" is established when there exists an "urgency to inform the public about an actual or alleged Federal government activity," when the requester is a "person primarily engaged in disseminating information," 6 C.F.R. § 15.5(d)(ii). The Requesters have demonstrated that an urgent need exists to inform the public about government surveillance of First Amendment protected activity. Indeed, the FBI has recognized not only the overwhelming urgency of our request but also the exceptional interest by the public in the records we seek. In their July 28, 2016 response to our Request, the FBI granted expedited processing, citing 28 C.F.R. 16.5 (e)(1)(iv) ("A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence.") Moreover, since the Request was submitted on July 5, the urgency to inform the public has only increased dramatically.

Since our request was filed, large campaigns and public events around policing, racial equality, and Black Lives Matter continue to be organized and promoted on a nearly daily basis across the country. In the wake of police shootings of Alton Sterling and Philando Castile in Baton Rouge and Minneapolis, the interest from members of the public to participate in protests and support this movement continues to grow, with the media having an equal interest to report on the issues being raised by nationwide protests. Indeed, in just a two-week period in July, there were over 112 protests in over 88 cities regarding police killings of Black people.[3] In many of these cities, peaceful protests were met with a strong law enforcement presence. Members of the public, particularly those interested in participating in, organizing or supporting these demonstrations, have a right to know the level of governmental surveillance of these protests and what effect that may have on their own privacy and security.

As described in our Request, the Requesters are primarily engaged in disseminating information. COC is a nonprofit civil rights advocacy and communications organization that exists to strengthen Black America's political voice. Its mission is to empower its members to make government more responsive to the concerns of Black Americans and to bring about positive political and social change for everyone. Using the Internet, COC enables its members to speak in unison, with an amplified political voice. COC's primary task is the dissemination of

---

[3] *See, e.g.*, Jasmine C. Lee et al., *At Least 88 Cities Have Had Protests in the Past 13 Days Over Police Killings of Blacks*, N.Y. Times (July 16, 2016), http://www.nytimes.com/interactive/2016/07/16/us/protesting-police-shootings-of-blacks.html?rref=collection%2Ftimestopic%2FPolice%20Brutality%20and%20Misconduct.

information, and it keeps the public informed about the most pressing issues for Black people in America and give them ways to act, including the government's record on surveillance of political and social movements. CCR is a non-profit, public interest, legal, and public education organization that for the last 50 years has engaged in litigation, public advocacy and the production of publications in the fields of civil and international human rights. COC, with the aid of CCR, will use their tested resources to publicly disseminate information received from this request. The Request thus qualifies for expedited processing under 6 C.F.R. §5.5(d)(ii).

In sum, as our Request made clear, Requesters easily demonstrate that there is a compelling need for the information requested and that we are organizations primarily engaged in the dissemination of information to the public. *See* 5 U.S.C. § 552(a)(6)(E).

### 2.   The DHS should grant the Requesters' Request for a Non-Conditional Fee Waiver

DHS erred in only conditionally granting Requestors' application for a few waiver.  DHS Denial at 3 ("The fee waiver determination will be based upon a sampling of the responsive documents received from the various DHS program offices."). As demonstrated below, applicable FOIA regulations obligate DHS to grant Requesters' request for a non-conditional few waiver.

The Department of Homeland Security has promulgated regulations setting forth factors to be considered in determining whether the statutory criteria for a fee waiver are met. 6 C.F.R. § 5.11(k). Nothing in the regulations or statute provide for conditionally granting a fee waiver, determinative upon review of a sample of the requested documents. Instead, the factors outlined in the regulations deal only with subject matter of the request itself, not the results that the agency finds. *See, e.g.*, 6 C.F.R. § 5.11(k)(2)(i) ("The subject of the request"); *see also Carney v. Dep't of Justice*, 19 F.3d 807, 814 ("[I]t is relevant to consider the subject matter *of the requests* and the ability of the requester to disseminate the information.") (emphasis added). There is no basis to withdraw a grant of a fee waiver based on DHS's evaluation of the usefulness of the material; the Requesters qualify for a fee waiver because the information we seek "is in the public interest because it is likely to contribute significantly to the public understanding of the activities or operations of the government and is not primarily in the commercial interest of the requester[s]," 5 U.S.C. § 552(a)(4)(A)(iii); *see also* 6 C.F.R. § 5.11(k).

Requesters meet the requirements of 6 C.F.R. § 5.11(k) because the subject of the Request concerns the operations or activities of the government, particularly government surveillance of First Amendment protected activity and the disclosure of the information is likely to significantly contribute to a public understanding of government operations or activities due to the Requesters' expertise in government surveillance and ability to convey the information to a "broad audience of persons." 6 C.F.R. § 5.11(k)(2)(i)-(iii). Moreover, the Requesters' primary interest is in disclosure; and Requesters have no commercial interest in the information. 6 C.F.R. § 5.11(k)(1)(ii). The primary purpose of this FOIA request is to obtain information to further the public's understanding of government actions and policies in regards to the surveillance of peaceful protestors. The Requesters will make any information that they receive as a result of this FOIA request available to the public, including the press, at no cost.

In addition, pursuant to 5 U.S.C. § 552(a)(4)(A)(iii), the Requesters qualify as "representatives of the news media," defined as "any person actively gathering new for an entity that is organized and operated to publish or broadcast news to the public." 6 C.F.R. § 5.11(b)(6). As described above, the public has an increasingly strong interest in learning about the government's surveillance of First Amendment protected activity by the Black Lives Matter movement and other related campaigns addressing police brutality and racial justice. The Requesters are non-profit organizations dedicated to civil rights and social activism, and have a proven track-record of compiling, editing and disseminating information and reports to the public about government functions and activities, including the government's record and position on surveillance, protests, policing and racial justice. *See Long v. Dep't of Homeland Sec.*, 113 F. Supp.3d 100, 107 (2015) (finding plaintiff's plan to publish reports permissible "distinct work" under FOIA); *see also National Sec. Archive v. Dep't of Defense*, 880 F.2d 1381, 1386 (D.C. Cir. 1989) ("[A]ny person or organization which regularly publishes or disseminates information to the public . . . should qualify for waivers as a 'representative of the news media.'"). Access to this information is crucial for Requesters and the communities they serve to evaluate governmental surveillance actions and their potential detrimental efforts.

For all these reasons, the Requesters are entitled to a full fee waiver under both 5 U.S.C. § 552(a)(4)(A)(iii) and 5 U.S.C. § 552(a)(4)(A)(ii)(II). A fee waiver would fulfill Congress' legislative intent in amending FOIA. *See Judicial Watch Inc. v. Rossotti*, 326 F.3d 1309 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers of noncommercial Requester.'"). In the alternative, the Requesters request a limitation of processing fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II). No search fee will be charged for requests by . . . representatives of the news media."). *See also* 6 C.F.R. § 5.11(d)(1). If no fee waiver is granted and the fees exceed $250.00, please contact the Requesters to obtain consent to incur additional fees.

**Conclusion**
I certify that everything here is true and correct to the best of my knowledge.

Sincerely,

Evan Feeney
Campaign Manager
Color Of Change

49 W 38th St
14th Floor
New York, NY 10018

# EXHIBIT D

**U.S. Department of Homeland Security**
Washington, DC 20528



August 29, 2016

Evan Feeney
Media Justice Campaign Manager
ColorofChange
49 West 38th Street
14th Floor
New York, NY 10018

Re:    **DHS Appeal Number 2016-HQAP-00078**
       **FOIA Request Number 2016-HQFO-00490**

Dear Mr. Feeney:

The Department of Homeland Security (DHS) has received your appeal of the response by the Privacy Office (PRIV) to your Freedom of Information Act (FOIA) request concerning surveillance of the black lives matter movement.  On behalf of the Deputy Associate General Counsel for General Law, we acknowledge your appeal and are assigning it number **2016-HQAP-00078** for tracking purposes.  Please reference this number in any future communications about your appeal.

A high number of FOIA requests have been received by the Department.  Accordingly, we have adopted the court-sanctioned practice of generally handling backlogged appeals on a first-in, first-out basis.[1]  While we will make every effort to process your appeal on a timely basis, there may be some delay in resolving this matter.  You may check the status of your appeal online at http://www.dhs.gov/foia-status.  Should you have any questions concerning the processing of your appeal, please contact me at kevin.tyrrell@hq.dhs.gov.

                                   Sincerely,

                                   Kevin L. Tyrrell
                                   Associate Director
                                   Appeals and Litigation

---

[1]  Appeals of expedited treatment denials will be handled on an expedited basis.

# EXHIBIT E

U.S. Department of Homeland Security
Intelligence & Analysis
Washington, DC 20528



Homeland
Security

September 20, 2016

Evan Feeney
Color of Change
49 W.38th St., Flr. 14
NewYork, NY  10018

RE: Freedom of Information Act Request 2016-IAFO-00220

Dear Mr. Feeney:

This letter is the final response to your Freedom of Information Act (FOIA) request to the Department of Homeland Security (DHS), Office of Intelligence and Analysis (I&A), received in this office on July 12 2016, for information regarding DHS policies and actions involving the monitoring and surveillance of public protests surrounding police violence, policing reform, racial justice, and the Black Lives Matter movement ("BLM").

We conducted a comprehensive search of files within the Office of Intelligence and Analysis (I&A) for records that would be responsive to your request. We were unable to locate or identify any responsive records

You have the right to appeal this determination that no responsive records exist in I&A. Should you wish to do so, you must send your appeal and a copy of this letter, within 60 days of the date of this letter, to: Associate General Counsel (General Law), U.S. Department of Homeland Security, Washington, D.C. 20528, following the procedures outlined in the DHS FOIA regulations at 6 C.F.R. § 5.9. Your envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all requestors and should not be taken as an indication that excluded records do or do not, exist.

The Office of Government Information Services (OGIS) also mediates disputes between FOIA requesters and Federal Agencies as a non-exclusive alternative to litigation. If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974. If you wish to contact OGIS, you may email them at ogis@nara.gov or call 1-877-684-6448.

Your request has been assigned reference number 2016-IAFO-00220. Please refer to this identifier in any future correspondence. You may contact this office at 202-447-3783 if you have any questions.

Sincerely,

Brendan Henry
FOIA Officer

# EXHIBIT F

colorof**change**.org

October 7, 2016

Freedom of Information Policy Office
U.S. Department of Homeland Security
245 Murray Drive SW
STOP-0655
Washington, D.C. 20528-0655

**RE: FOIA Request Number 2016-IAFO-00220**

To Whom It May Concern:

I write on behalf of Color of Change ("COC") and the Center for Constitutional Rights ("CCR") (collectively "the Requesters") concerning our July 5, 2016 FOIA request, referenced above, and in response to a letter received via email from the Office of Intelligence & Analysis ("OIA"), a component of the Department of Homeland Security ("DHS"), dated September 20, 2016 (but not received by COC until September 27, 2016). The letter purports to be OIA's final response to COC's requests. *See* Exhibit A (attached hereto without documents produced with the response) ("OIA Final Response"). COC therefore hereby appeals to DHS from the OIA Final Response for the following reasons.

First, OIA's searches of information regarding monitoring and surveillance of public protests surrounding police violence, police reform, racial justice, criminal justice, and the Black Lives Matter movement were inadequate. OIA's letter stated that it had conducted a comprehensive search but failed to provide any information describing how the search was conducted. FOIA requires DHS to conduct a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). OIA's failure to produce any documents, coupled with its failure to provide any information regarding the search it may have undertaken, renders its response inadequate. DHS has not indicated what search terms were used, which databases were searched, or any other information which would enable requesters to assess or challenge the adequacy of the search.

Second, OIA's Final Response states that "Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA." To the extent that these statements suggest that OIA is not required to produce any records regarding law enforcement and national security or that may fall under certain FOIA exemptions, OIA has erred. 5 USC § 552(b) requires that records be produced, in redacted form if necessary, and that agencies indicate what portions they believe are exempt and why. The government must produce responsive records and "reasonably detailed explanations of why material was withheld." *Halpern v. FBI*, 181 F.3d 279, 295 (2d Cir. 1999). "Courts have long held that, in the absence of 'reasonably detailed explanations of why material was withheld,' appropriate judicial 'review is not possible.'" *Nat'l Immigration Project v. Dep't of Homeland Sec.*, No. 11 Civ. 3235, 2012 U.S. Dist. LEXIS 184036, 2012 WL 6809301, at *17 (S.D.N.Y.

Dec. 27, 2012)( citing *Halpern*, 181 F.3d at 295). Should DHS have responsive records, it is required under FOIA to produce them, and at most be allowed to redact any protected language and justify such redactions through invocations of statutory exemptions, not withhold it altogether.

Finally, DHS failed to reference any searches regarding the Office of Public Affairs or any other component of DHS, such as the Office of Operations Coordination, Federal Emergency Management Agency, or any other appropriate offices and departments within DHS that relate to the FOIA request. We understand that those components of DHS have failed to make a determination on our request.

Thank you for your attention to this matter. Please direct any responses to: Evan Feeney at evan.feeney@colorofchange.org or by mail to Evan Feeney, Color of Change, 49 W. 38th Street, Floor 14, New York, NY 10018.

Sincerely,

Evan Feeney
Media Justice Campaign Manager
ColorOfChange

On Behalf of the Requesters

# EXHIBIT G



**U.S. Department of Homeland Security**
Washington, DC 20528

October 20, 2016

Evan Feeney
Media Justice Campaign Manager
Color of Change
49 West 38th Street
14th Floor
New York, NY 10018

Re:   **DHS Appeal Number 2017-HQAP-00021**
      **FOIA Request Number 2016-IAFO-0655**

Dear Mr. Feeney:

The Department of Homeland Security (DHS) has received your appeal of the response by I&A to your Freedom of Information Act (FOIA) request concerning records on monitoring and surveillance of public protest.  On behalf of the Deputy Associate General Counsel for General Law, we acknowledge your appeal and are assigning it number **2017-HQAP-00021** for tracking purposes.  Please reference this number in any future communications about your appeal.

A high number of FOIA requests have been received by the Department.  Accordingly, we have adopted the court-sanctioned practice of generally handling backlogged appeals on a first-in, first-out basis.[1]  While we will make every effort to process your appeal on a timely basis, there may be some delay in resolving this matter.  You may check the status of your appeal online at http://www.dhs.gov/foia-status.  Should you have any questions concerning the processing of your appeal, please contact me at kevin.tyrrell@hq.dhs.gov.

Sincerely,

Kevin L. Tyrrell
Associate Director
Appeals and Litigation

---

[1]  Appeals of expedited treatment denials will be handled on an expedited basis.

# EXHIBIT H



U.S. Department of Justice

Federal Bureau of Investigation
Washington, D.C. 20535

July 28, 2016

MR. EVAN FEENEY
COLOROFCHANGE
14TH FLOOR
49 W 38TH STREET
NEW YORK, NY 10018

FOIA Request No.: 1353900-000
Subject: Policies for Monitoring and
Surveillance of Public Protests
(Police Violence and Reform, Racial Justice,
and BLM/August 2014 – Present)

Dear Mr. Feeney:

This is in reference to your letter directed to the Federal Bureau of Investigation (FBI), in which you requested expedited processing for the above-referenced Freedom of Information Act (FOIA) request. Pursuant to the Department of Justice (DOJ) standards permitting expedition, expedited processing can only be granted when it is determined that a FOIA request involves one or more of the below categories.

You have requested expedited processing according to:

☐   28 C.F.R. §16.5 (e)(1)(i): "Circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual."

☐   28 C.F.R. §16.5 (e)(1)(ii): "An urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information."

☐   28 C.F.R. §16.5 (e)(1)(iii): "The loss of substantial due process of rights."

☑   28 C.F.R. §16.5 (e)(1)(iv): "A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence."

You have provided enough information concerning the statutory requirements permitting expedition; therefore, your request is approved.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us." The FOIPA Request number listed above has been assigned to your request. Please use this number in all correspondence concerning your request. Your patience is appreciated.

You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's FOIAonline portal by creating an account on the following web site: https://foiaonline.regulations.gov/foia/action/public/home. Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." Please cite the FOIPA Request Number assigned to your request so that it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS) at 877-684-6448, or by emailing ogis@nara.gov. Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@ic.fbi.gov. If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services." Please also cite the FOIPA Request Number assigned to your request so that it may be easily identified.

Sincerely,

David M. Hardy
Section Chief
Record/Information
  Dissemination Section
Records Management Division

# EXHIBIT I

September 20, 2016

Freedom of Information Act Request
Federal Bureau of Investigation
170 Marcel Drive
Winchester, VA 22602-4843

**Re: Freedom of Information Act Request - No. 1353900-00**

To Whom It May Concern:

On July 28, 2016 Color of Change ("COC") and The Center for Constitutional Rights ("CCR") (collectively "the Requesters") received confirmation that our July 5, 2016 request No. 1353900-00 ("Request") was approved for expedited processing. Since then we have not received any further communications from your department.

The Requesters would like to reiterate the urgency of our Request given ongoing public concern about the FBI and other law enforcement's role in surveilling protected First Amendment activities, particularly activities relating to the movement for Black lives. As an example, in a recent incident that occurred in the weeks since our Request was filed, the FBI appears to have engaged in surveillance tactics that likely chilled the First Amendment activities of people who wished to protest the 2016 Republican National Convention in Cleveland.[1]

In light of the above, Requestors ask that the FBI promptly respond to this letter to inform us of when we can expect to receive documents responsive to our Request.

Sincerely,

Evan Feeney
Color Of Change
49 W 38th St, Floor 14
New York, NY 10018

On Behalf of the Requesters

---

[1] AJ Vincent, *This FBI Tactic May Have Silenced GOP Convention Protesters in Cleveland*, Mother Jones (July 25, 2016) *available at:*http://www.motherjones.com/politics/2016/07/fbi-local-cops-visiting-activists-homes-rnc